## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| KOMAWI A.,[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 22 C 6409** |
| v. | ) | |
| | ) | **Magistrate Judge Laura K. McNally** |
| FRANK BISIGNANO, | ) | |
| Commissioner of | ) | |
| Social Security,[2] | ) | |
| | ) | |
| **Defendant.** | ) | |

### ORDER[3]

Before the Court is Plaintiff 's Komawi A's memorandum in support of summary judgment, asking the Court to remand the Administrative Law Judge's ("ALJ") decision denying his applications for disability benefits (Dkt. 16: Pl. Mem. in Support of Summ. J.: "Pl. Mem.") and Defendant's motion and memorandum in support of summary

---

[1] The Court in this order is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court.

[2] The Court substitutes Frank Bisignano for his predecessor, Leland Dudek, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On December 8, 2022, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (Dkt. 8.)

judgment (Dkt. 19: Def. Mot. for Summ. J.; Dkt. 20: Def. Mem. in Support of Summ. J.: "Resp.")

## I.     Procedural History

Plaintiff filed his first application for supplemental security income and disability insurance benefits on February 14, 2013. (R. 164.) He alleged that his onset date was December 5, 2012. (R. 799.). His date last insured was December 31, 2017. (R. 564.)

After a hearing, Administrative Law Judge Karen Sayon denied his application on March 2, 2015. (R. 452-69.) The Appeals Council denied Plaintiff's appeal on June 15, 2016. (R. 1-6.) Subsequently, Plaintiff filed a second application for benefits on August 12, 2016 (R. 767-80) and also appealed the Appeals Council denial to the district court. (R. 480-82.) On October 16, 2017, the district court remanded the case back to the ALJ. (R. 541-53.) Specifically, the Court directed the ALJ to further consider the opinion of Plaintiff's treating doctor Samina Khattak and to clarify Plaintiff's ability to interact with supervisors. (*Id.*) The Court also directed the ALJ to "reassess all of the opinion evidence of record and evaluate Plaintiff's RFC and vocational abilities as appropriate." (R. 548.) Pursuant to the remand, the Appeals Council ordered the ALJ to consolidate both of Plaintiff's applications and convene a new hearing to consider the District Court's order. (R. 555-59.)

ALJ Sayon held a second hearing on February 5, 2019, during which Plaintiff, who was represented by an attorney, and a vocational expert testified. (R. 417-51.) On February 25, 2019, the ALJ again found Plaintiff not disabled. Plaintiff appealed, and it is that matter that is now before the Court.[4] After considering the parties' briefs and evidence, the Court grants Plaintiff's motion to remand and denies the Commissioner's motion to affirm the opinion of the ALJ.

## II.   ALJ Decision

The ALJ applied the Social Security Administration's five-step sequential evaluation process to Plaintiff's claims. At Step One, she found that Plaintiff had not engaged in substantial gainful activity since his onset date. (R. 565.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of depression, anxiety, headaches, osteoarthritis of the knees, and lumbar spondylosis. (*Id.*)

At Step Three, the ALJ found that none of Plaintiff's impairments met a Listing. (R. 566.) In considering Plaintiff's mental impairments, the ALJ undertook the "Paragraph B" analysis for evaluating mental limitations. *(R. 566-67.)* The ALJ determined that Plaintiff had moderate limitations in understanding, remembering, and applying information, interacting with others, concentrating, persisting, and maintaining pace and adapting and managing himself. (*Id.*)

---

[4] The Appeals Council subsequently denied review of the opinion (R. 394-400), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

Before Step Four, the ALJ determined that Plaintiff had the residual functional capacity to perform medium work except he could frequently, but not constantly, climb, stoop, kneel, crouch, or crawl. (R. 568.) Further, Plaintiff must avoid concentrated exposure to hazards. (*Id.*) He is limited to work involving simple one and two-step tasks of a routine and repetitive type and work involving only simple instructions. (*Id.*) Moreover, the ALJ determined that Plaintiff "has alleged limited social tolerance and thus would do best in socially undemanding and restrictive setting that requires reduced interpersonal contact, away from the general public," but the ALJ found that Plaintiff could related acceptably with supervisors and coworkers and thus could have occasional interaction with them. (*Id.*)

At Step Four, the ALJ found that Plaintiff could not perform his past position as a delivery truck driver. (R. 582.) At Step Five, the ALJ found there were significant jobs in the national economy Plaintiff could perform pursuant to his residual functional capacity. (*Id.*) Therefore, the ALJ found that Plaintiff was not disabled. (R. 583.)

## III.    Legal Standard

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

4

To determine whether a plaintiff is disabled, the ALJ considers the following five questions, known as "steps," in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either Step Three or Step Five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step other than at Step Three precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at Steps One to Four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work that exists in significant numbers in the national economy. *Id.*

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize

5

the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054.

The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit has further clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

## IV.     Analysis

All of Plaintiff's arguments in favor of remand concern the ALJ's consideration of several of the medical opinions in the record. (Pl. Mem. at 8.) This comports with the District Court's remand order that the ALJ give further consideration to the opinion

6

evidence. Specifically, Plaintiff contends that (1) the ALJ failed to properly accommodate his physical deficits because she improperly relied on the opinion of a non-examining state agency doctor, and (2) the ALJ improperly rejected the opinions of Plaintiff's psychiatrist and other treating providers regarding Plaintiff's mental limitations. (*Id.*)

As an initial matter, because Plaintiff filed his application before March 27, 2017, the ALJ was required to give controlling weight to the opinion of his treating doctor if it was well supported by medical findings and consistent with other evidence in the record. 20 C.F.R. § 404.1527(c)(1); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009), citing 20 C.F.R. § 404.1527(d)(2).

Plaintiff argues that the ALJ erred by not giving controlling weight to Tharanum Zehra, M.D. who treated Plaintiff's physical impairments, and Samina Khattak, M.D., a psychiatrist to treated Plaintiff's mental impairments. (Pl. Mem. at 9, 12.) Plaintiff further contends that the ALJ compounded her error by instead relying on the opinions of non-examining state agency doctors to support the residual functional capacity. (Pl. Mem. at 11.) Because the Court agrees that the ALJ erred in evaluating the opinion

evidence concerning Plaintiff's physical impairments, it does not reach Plaintiff's other assignments of error.[5]

### A. The ALJ did not Support the Physical Residual Functional Capacity with Substantial Evidence.

In determining Plaintiff could work at the medium level with additional postural limitations, the ALJ did not give controlling weight to the opinion of Dr. Zehra, Plaintiff's treating internist. (R. 578.) Instead, the ALJ adopted the opinion of non-examining state agency doctor Reynaldo Gotanco, M.D. (R. 579.) While the Court finds that the ALJ supported with substantial evidence her decision to not give Dr. Zehra's opinion controlling weight, she did not adequately justify her consideration of Dr. Gotanco's opinion, on which she based her residual functional capacity determination. Therefore, remand is required.

Dr. Zehra opined in January 2014 that Plaintiff could stand and/or walk for a total of one-to-two hours in an eight-hour workday, sit for two-to-four hours, and occasionally lift up to ten pounds. (R. 348-52.) In declining to give controlling weight to Dr. Zehra's opinion, the ALJ explained that Dr. Zehra's own clinical examinations were inconsistent with his opinion that Plaintiff's knee and back impairments significantly

---

[5] The Court recognizes that the District Court's remand order focused primarily on the ALJ's treatment of opinion evidence concerning Plaintiff's mental impairments. But the order directed the ALJ to consider all opinion evidence in crafting a new residual functional capacity, which the ALJ did. In this case, the Court finds that the ALJ's treatment of the physical evidence is sufficient for remand and thus issues its order on that reason alone.

limited his ability to stand or walk. (R. 578.) To that end, the ALJ pointed out that Dr. Zehra's notes repeatedly showed no abnormalities in Plaintiff's musculoskeletal system or neurological function. (*Id*.) Further, the ALJ acknowledged that while the doctor noted Plaintiff's mild swelling in his left knee in 2015 and 2016, subsequent examinations did not show swelling or motor strength limitations. (*Id*.)

Moreover, the ALJ explained that while Dr. Zehra opined that Plaintiff' had a severely limited ability to walk, stand, lift, and bend in 2014, imaging of Plaintiff's spine in February 2018 showed only minimal degenerative changes and imaging of his knees showed progressing degenerative changes but no acute abnormalities.[6] (*Id*.) The ALJ also discussed Plaintiff's treatment, noting that the most aggressive treatment he received was steroid injections in his knees and physical therapy, and that Plaintiff declined multiple referrals to an orthopedist. (*Id*.) She finally noted that Dr. Zehra was an internist and not a specialist.

The Court finds that even considering pre-2017 social security regulations, substantial evidence supports the ALJ's decision to give Dr. Zehra's opinion little weight. The ALJ pointed to specific reasons that Dr. Zehra's restrictive opinion was not supported by Plaintiff's generally benign medical tests. She further explained that Dr.

---

[6] In what appears to be a typographical error, the ALJ refers to Plaintiff's x-rays as dated both March 2017 (incorrect), and February 2018 (correct). Regardless of the mistake, the ALJ explains that that even "as late as" three years after Dr. Zehra's opinion, x-rays show only mild degenerative changes in Plaintiff's back and progressing degenerative changes in Plaintiff's knee.

Zehra's opinion was not consistent with her own treatment notes that documented many normal examinations as well as some mild findings. The ALJ considered the length and frequency of Plaintiff's treatment with Dr. Zehra, her specialty, test and examination results, and the types of treatment Plaintiff received. This is all the regulations require when an ALJ decides not to give a treating doctor's opinion controlling weight. 20 C.F.R. § 1527(d)(2).

After giving Dr. Zehra's opinion little weight, the ALJ instead gave great, *i.e.*, controlling, weight to the opinion of non-examining state agency doctor Reynaldo Gotanco. (R. 579.) Dr. Gotanco concluded in March 2017 that Plaintiff was capable of medium work with additional postural limitations. (R. 507-22.) In explaining why she relied on Dr. Gotanco's opinion in support of the residual functional capacity, the ALJ acknowledged that Dr. Gotanco had not examined or treated the Plaintiff. (R. 579.) She explained, however, that the opinion was consistent with clinical exams and imaging in the medical record. In making this determination, the ALJ acknowledged Plaintiff's ongoing complaints of back and knee pain. After considering the ALJ's reasoning, the Court finds two errors that compel remand.

First, in explaining why she gave Dr. Gotanco's opinion great weight, the ALJ specifically refers to February 2018 imaging of Plaintiff's knees and spine (R. 1457-58), acknowledging that it showed progressing osteoarthritis. She decided, however, that

those test results did not outweigh examination notes in the record that consistently showed Plaintiff's gait and neurological exams were normal. (R. 579.)

The problem is that Dr. Gotanco gave his opinion in March 2017. Therefore, it could not account for later medical treatment and the 2018 imaging of Plaintiff's knees and spine that showed an arguable worsening of Plaintiff's condition. Specifically, the report from the 2018 imaging assessed advanced degenerative changes in Plaintiff's knees and also noted that his left knee had progressed when compared to imaging from October 2013. (*Id.*) In her decision, the ALJ specifically referred to the 2018 imaging results several times as evidence that Dr. Gotanco's opinion had support in the record. But Dr. Gotanco never saw those test results; indeed, no doctor opined that Plaintiff could nonetheless work at the medium level despite the progression of his osteoarthritis. Therefore, in deciding that Plaintiff's 2018 imaging did not warrant greater limitations than those in Dr. Gotanco's opinion, the ALJ impermissibly interpreted medical tests beyond her area of expertise. *See McHenry v. Berryhill,* 911 F.3d 866, 871 (7th Cir. 2018).

The ALJ made a second error when she discussed Plaintiff's decreased range of motion in his lower back during physical therapy sessions. The ALJ explained she accounted for this symptom through Dr. Gotanco's opinion that Plaintiff had postural limitations of frequent climbing of ladders, ropes, and scaffolds and frequent stooping, kneeling, crouching, and crawling. (R. 579.) But Plaintiff underwent physical therapy in

11

2018, after Dr. Gotanco issued his opinion. There is no way the doctor could have determined that his assessed postural limitations would account for symptoms Plaintiff exhibited later.

The Court cannot trace the ALJ's reasoning behind her determination that Dr. Gotanco's opinion accounted for limitations in Plaintiff's back and knees when those limitations were not documented until over a year after the opinion issued. That is, the ALJ has not built a logical bridge from the evidence to her conclusion.

A separate problem with the ALJ's opinion is that she did not investigate the reasons for Plaintiff's supposed failure to adhere to treatment recommendations before discounting the severity of Plaintiff's subjective symptoms. Several times in her opinion, the ALJ noted that Plaintiff declined an orthopedic referral or did not attend physical therapy sessions. (R. 575, 577, 578.) Notably, the ALJ relied on Plaintiff's denial of further orthopedic treatment as support for Dr. Gotanco's opinion. (R. 578.)

Before an ALJ can make a negative inference about a claimant's failure to follow prescribed treatment, she must inquire into the reasons for noncompliance. *Ray v. Berryhill,* 915 F.3d 486, 490-91 (7th Cir. 2019). Here, the ALJ plainly pointed to Plaintiff's failure to follow through with orthopedic referrals as a reason to discount the severity of his back and knee pain. And then she used that noncompliance as evidence to support the residual functional capacity. But the ALJ never asked Plaintiff why he did

12

not follow through with the referrals and why he missed some of his physical therapy appointments. This was error.

## CONCLUSION

For the reasons explained above, the Court grants Plaintiff's motion for summary judgment (Dkt. 16) and denies Defendant's motion to affirm the ALJ's decision. (Dkt. 19.)


**SO ORDERED.**

ENTER:

**LAURA K. MCNALLY**
**United States Magistrate Judge**


**DATED: June 27, 2025**